UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 4:15 CR 404(3) HEA (NAB) |
| v. | ) | |
| | ) | *This is a Capital Case* |
| ANTHONY JORDAN, | ) | |
| | ) | |
| Defendant. | ) | |

**DEFENDANT ANTHONY JORDAN'S POSTHEARING MEMORANDUM IN SUPPORT OF MOTION TO BAR THE GOVERNMENT FROM PROCEEDING ON <u>COUNTS TWO THROUGH TWELVE ON THE BASIS OF JUDICIAL ESTOPPEL</u>**

Defendant Anthony Jordan, through undersigned counsel, submits this Post-Hearing Memorandum in support of his motion to judicially estop the government from proceeding on Counts Two through Twelve. For the reasons set forth here, in the previous defense submissions, and the hearing held on April 23, 2021, the Court should grant this motion.

**Procedural History**

On June 5, 2020 the defense filed a *Motion to Bar the Government from Proceeding on Counts Two Through Twelve on the Basis of Judicial Estoppel*. ECF No. 2667. The defense argued that the government, by bringing multiple counts of § 924(c) based on a single underlying predicate offense, violated its longstanding policy set forth in a 1999 Department of Justice ("DOJ") memorandum barring such prosecutions. Furthermore, because the government previously relied upon and cited to the 1999 memorandum numerous times in the Supreme Court as well as Courts of Appeals to successfully avoid adverse decisions on this very issue, it is judicially estopped from now changing its position in this matter.

On August 19, 2020, the government filed its response to this motion ("First Response"). ECF No. 2752. The government set forth two arguments: (1) that 18 U.S.C. § 924(j) is a separate offense and the 1999 memorandum only applies to cases involving 18 U.S.C. § 924(c), not cases that involve § 924(c) and § 924(j); and (2) the 1999 memorandum is an internal guidance memorandum which Jordan cannot rely upon for relief. On August 31, 2020, the defense filed its Reply to the government's First Response. ECF No. 2760.

On January 14, 2021, the defense filed a Declaration in Support of its Motion. ECF No. 2944. The declaration consisted of the sworn statements of the authors of the 1999 memorandum—former DOJ career prosecutors John De Pue and Nancy Oliver. Mr. De Pue and Ms. Oliver averred that the government's position as set forth in its First Response was erroneous and that the indictment violated the mandate set forth in the 1999 memorandum. ECF No. 2944 at 5, 11. They further averred that the 1999 memorandum was authored in part with the intent to reduce the likelihood of a decision adverse to the government. ECF No. 2944 at 4-5.

On March 25, 2021, the government filed a Response to the Declaration ("Second Response"). ECF No. 3181. The government filed this response to "confirm that their charging decision in this case is consistent with the Department of Justice policy and that the views expressed in the declaration do not reflect the views of the Department of Justice." ECF No. 3181 at 2. The government reiterated its arguments that: (1) § 924(j) is a separate offense and the 1999 memorandum is inapplicable here because this matter involves § 924(c) and § 924(j); and (2) Mr. Jordan cannot seek relief based upon an internal DOJ guidance memorandum.

On April 21, 2021, the Court held a pre-hearing telephonic conference with the parties. The parties agreed to admit the declarants' testimony by stipulation to their declaration in lieu of live testimony. On April 23, 2021, the Court held a hearing on this motion.

On May 10, 2021, based on the agreement reached at the prehearing conference, the defense submitted a Supplemental Declaration from Mr. De Pue and Ms. Oliver. ECF No. 3296. Mr. De Pue and Ms. Oliver carefully reviewed the positions taken by the government in its Second Response and averred that they continued to adhere to their initial declaration that the indictment in this matter violated the mandate set forth in the 1999 memorandum.

The record in this matter is complete and this motion is now ripe for decision by this Court. For the following reasons, this Court should grant the motion.

## ARGUMENT

**I.    THE GOVERNMENT HAS ABANDONED ITS ARGUMENT THAT THE 1999 MEMORANDUM IS AN INTERNAL GUIDANCE DOCUMENT THAT CANNOT BE RELIED UPON BY MR. JORDAN.**

At the April hearing – despite arguing in both its First and Second Responses that the defense cannot rely on an internal guidance document, ECF No. 2752 at 9, ECF No. 3181 at 24 – the government abandoned that position. The government now concedes that its current position "has nothing to do with whether this guidance from 1999 is confidential or internal." Tr. 4/23/21 at 20. In fact, the government concedes, as it must, that the 1999 memorandum is not internal, but that it "absolutely was made public by attaching it to responses to cert petitions filed in the Supreme Court." *Id.*

The government's sole remaining argument is that § 924(j) is a separate "offense," and thus the 1999 memorandum is inapplicable because the memorandum is allegedly limited to § 924(c) offenses and does not include cases (like this one) involving both sections § 924(c) and § 924(j). For the following reasons, this argument, like the now discarded "internal memorandum" argument, is meritless and should be rejected by this Court.

II.     **THE LAW OF THIS CIRCUIT IS CLEAR: § 924(j) IS NOT A SEPARATE OFFENSE FROM § 924(c).**

The government views § 924(j) as an offense in and of itself and therefore a separate offense from § 924(c). *See* ECF No. 2752 at 8; ECF No. 3181 at 8, 23. The government's position is factually and legally unsound and should be rejected by this Court.

A.     **The Eighth Circuit in *United States v. Allen* Rejected the Argument that § 924(j) is a Separate Offense.**

Foremost, the government's current position is in direct conflict with long standing Eighth Circuit law. In *United States v. Billie Allen*, 247 F. 3d 741 (8th Cir. 2001), the Eighth Circuit directly addressed the issue of whether § 924(j) was a part of § 924(c) as an enhanced punishment or whether it was a separate offense. The *Allen* court's holding was clear: § 924(j) is not a separate offense. Unfortunately for the government, *Allen* is an Eighth Circuit decision, is still good law and all parties to this litigation – the Court, the defense, the local federal prosecutors, and the DOJ – are bound by its holding.

The defendant in *Allen* – like the government here – argued that § 924(j) was a separate offense and should be construed independently from § 924(c). However, the government in its brief to the Eighth Circuit in *Allen* argued *the exact opposite* of what it now argues. In *Allen*, the government argued that § 924(j) was *not a separate offense* but rather simply an additional enhancement of the penalties set forth in § 924(c). *See* ECF No. 2760-1 at 27 (Government's Brief in *Allen* at 123).

In deciding *Allen*, the Eighth Circuit reviewed the legislative history behind § 924(j) and (c) and rejected Allen's position. Specifically, the Court held that § 924(j) expressly incorporates (c) and requires a violation of (c) prior to the imposition of the penalties in (j). "Thus Section 924(j) cannot be read independently from the context of the punishment scheme set out in 924(c)

. . . we think Section 924(j) is fairly interpreted as an additional aggravating punishment for the scheme already set out in Section 924(c)." *Allen*, 247 F. 3d at 769.

The holding in *Allen* is completely consistent with the position taken by the defense here and the analysis set forth in the declaration by career DOJ prosecutors Mr. De Pue and Ms. Oliver. The government strains to avoid the clear holding of *Allen* and has taken inconsistent positions *during this very litigation*.

In its First Response, the government admitted, as it must, that its main argument that § 924(j) is a separate offense "*differs* from the Eighth Circuit's characterization of Section 924(j) [in Allen]." *See* ECF No. 2752 at 8 (emphasis added). Recognizing the fatal flaw in this argument, the government switched gears in its Second Response. In its Second Response, the government disingenuously argues that it actually "agrees" with the holding in *Allen*. ECF No. 3181 at 18. And, instead, the government asserts for the first time that the holding in *Allen* does not "differ" from its current position but rather is distinguishable from its current position because it arose in the context of double jeopardy. *Id.* at 22-23. Both attempts to avoid the holding set forth in *Allen* fail.

It is inconsequential that the governing circuit precedent, *United States v. Allen*, arose in the context of a double jeopardy claim rather than one involving the proper unit of prosecution for multiple murders alleged under § 924(j). *See* Tr. 4/23/21 at 20. *Allen's* broad holding that § 924(j) merely constitutes an "additional aggravating punishment," *Allen*, 247 F.3d at 769, for a § 924(c) violation is equally dispositive of the issue presented here. Simply put, the *Allen* Court dealt with the question faced by this Court – is § 924(j) a separate offense – and, after looking at the legislative history and congressional intent, concluded that it was not.

**B.  The Government's Current Position Directly Conflicts with the Eighth Circuit Model Jury Instructions.**

The Eighth Circuit's Model Jury Instructions further support the defense position. The Instructions were adopted in 2017 to offer "clear, brief and simple instructions" to jurors concerning the law. *Eighth Circuit Manual of Model Jury Instructions (Criminal)* at xiii (2017). The Instructions were promulgated by a Committee comprised of federal district court judges, federal prosecutors, and defense attorneys from throughout the Eighth Circuit, including St. Louis. These Model Instructions – in clear and simple language – directly refute the DOJ's argument that § 924(j) is a separate offense.

The Instructions concerning § 924(c) and (j) provide: "924(j) is not independent of section 924(c) and the punishment provisions of that section. Section 924(j) is an additional aggravating punishment for the scheme set out in section 924(c)." *Eighth Circuit Manual of Model Jury Instructions (Criminal)* at 276 (2017). The 2019 Supplement to the Instructions reiterates that § 924(j) is not a separate offense but rather is additional punishment for a violation of (c). "Section 924(j) provides for additional significant punishment applicable when a section 924(c) offense results in death." *Supplement to the Eighth Circuit Manual of Model Jury Instructions (Criminal)* at § 6.18.924C-1 (2019).

The government is inviting this Court to adopt a position directly contrary to the collective understanding of the federal criminal law practitioners in this Circuit.

**C.  The Indictments Returned in this Case Make Clear that § 924(j) is not a Separate Offense but Rather Enhanced Punishment for a § 924(c) Violation.**

In August 2015, a grand jury in the Eastern District of Missouri returned the first indictment in this matter. It contained three counts against a single defendant—Anthony Jordan. Count 1 set forth the underlying predicate offense of drug conspiracy under 18 U.S.C. § 841. Counts 2 and 3 set forth two violations of § 924(c) punishable by § 924(j).

6

In this initial indictment, the local federal prosecutors did not present – nor did the grand jury return – separate counts for § 924(j) "offenses." Rather, the indictment specifically stated that Anthony Jordan discharged a firearm in furtherance of a drug trafficking conspiracy "in *violation . . .* 924(c)" and in the course of this violation caused the deaths of Robert Parker and Clara Walker, "thereby making this offense *punishable* under . . . 924(j)(1)." ECF No. 2 at 2 (emphasis added).

During the next four years, the local federal prosecutors returned to the grand jury no less than five times to file superseding indictments. Each time, they presented to the grand jury counts alleging *violations* of § 924(c) *punishable* by § 924(j). *See, e.g.*, ECF No. 35 at 6; ECF No. 392 at 7; ECF No. 680 at 7–8.

In December 2018, the current indictment (the Fifth Superseding Indictment) was filed. Here again the local federal prosecutors presented to the grand jury in Counts Two through Twelve *violations* of § 924(c) *punishable* by (j). *See, e.g.*, ECF No. 1990 at 3. And again the grand jury did not return a single count asserting a violation of § 924(j). The language in each of Counts Two through Twelve is identical: Anthony Jordan is alleged to have *violated* § 924(c) and to have caused a death, making that violation *punishable* by (j). *Id.*

The preceding indictments and the current indictment speak loudly and clearly. The DOJ is currently urging this Court to adopt a position that was not even followed by the local federal prosecutors each time they appeared before the grand jury in this district. This disconnect may be the result of a fundamental misunderstanding of the indictment in this matter.

In its Second Response, the DOJ purports to describe the current indictment for the Court. Instead, they misstate what the local prosecutors presented, what the grand jury returned, and, most importantly, what the indictment alleges. Specifically, in its Second Response, the

DOJ describes the current indictment as follows: "In December 2018 a federal grand jury in the Eastern District of Missouri returned a Fifth Superseding Indictment charging Jordan with . . . 11 counts of murder by using a firearm while engaged in a drug trafficking crime, *in violation of 18 U.S.C. 924(j)* (Counts 2-12)." *See* [3181] at 3. (Emphasis added). This assertion is simply wrong. Nowhere in the Fifth Superseding Indictment is there a *violation* of § 924(j) alleged.

The DOJ cannot have it both ways. If its current position is correct that § 924(j) is a separate offense, then why is that not borne out by what their local prosecutors presented time and again to the grand jury? And if § 924(j) is a separate offense, then why did multiple grand juries not return separate counts for these § 924(j) "offenses"? The answer is simple: local federal prosecutors followed this Circuit's law and did not treat § 924(j) as a separate offense from § 924(c). This Court must do the same and ignore the DOJ's position.

### D. The Superseding Information Recently Filed in *United States v. Woodson* Further Supports Mr. Jordan's Position.

Maurice Woodson was a co-defendant of Anthony Jordan who recently pled guilty. The DOJ's current position that it wants this Court to adopt directly contradicts the actions the government took just two months ago in front of Judge Autry in Woodson's case.

In January of 2016, Woodson was indicted and accused of conspiring with Anthony Jordan and others to distribute drugs. The government also alleged that, on December 5, 2013, Woodson used a firearm in furtherance of the drug conspiracy that resulted in the death of Byron Earts, in violation of § 924(c) and punishable by § 924(j). *See* Superseding Indictment, *United States v. Velazquez,* No. 4:15-cr-404-HEA (E.D. Mo. Jan. 7, 2016) (ECF No. 35 at 6-10).

Eventually, Woodson was charged with using a firearm, on November 28, 2014, to cause Dante Jones' death, in violation of § 924(c) and punishable by § 924(j). *See* ECF No. 1990 at 38.

8

In the Fifth Superseding Indictment, the two § 924(c) charges against Woodson punishable by § 924(j) were separated into two counts. Specifically, Count 20 set forth the December 5, 2013 death of victim Earts and Count 27 set forth the November 28, 2014 death of victim Jones. Because both § 924(c) counts arose from the single underlying predicate offense of the drug distribution conspiracy set forth in Count 19, they clearly violated the mandate set forth in the 1999 DOJ memorandum.

Shortly after Mr. Jordan filed his judicial estoppel motion, and after the defense filed a declaration from the authors of the 1999 memorandum pointing out the flaw with Counts Two thru Twelve of Mr. Jordan's indictment, the government changed course with Mr. Woodson. On February 25, 2021, the government filed a Superseding Information in Mr. Woodson's matter to bring that case into conformance with the mandate set forth in the 1999 memorandum. *See* Superseding Information, *United States v. Velazquez,* No. 4:15-cr-404-HEA (E.D. Mo. Jan. 7, 2016) (ECF No. 3047) (attached hereto as Exhibit 1).

This Superseding Information followed the exact position that Mr. Jordan has been asserting that this Court should follow. It also directly contradicted the position the DOJ has been taking in its opposition to Mr. Jordan's judicial estoppel motion. Specifically, the Woodson Superseding Information combined the two previously separate § 924(c) violations into a single count (Count Two) despite the fact that it encompasses two separate victims (Earts and Jones), two separate deaths, occurring on two separate days (December 5, 2013 and November 28, 2014), and despite the fact that both are punishable by § 924(j).

Judge Autrey accepted Woodson's guilty plea to the amended charges set forth in the Superseding Information including the revamped Count 2. If – as the government contends here – § 924(c) and § 924(j) are separate offenses, then how could Judge Autry accept a plea that

combines those separate "offenses" into a single count? If the government is correct that § 924(j) is a separate offense, then Woodson's information charging more than one "offense" in a single count is duplicitous and invalid. *See*, *e.g.*, *United States v. Paul*, 885 F.3d 1099, 1104 (8th Cir. 2018); *United States v. Karam*, 37 F.3d 1280, 1285–86 (8th Cir. 1994).

When the government addressed the Woodson Superseding Information on the record at the motion hearing on April 23, 2021, the government insisted that the changes were merely the result of "plea negotiations." Tr. 4/23/21 at 20, 24. Defense counsel are certainly aware that much can be done when adversaries engage in plea negotiations. However, the parties simply cannot enter into a negotiated plea, and have it approved by the District Court, that violates the law. By combining what the government tells us here are two separate "offenses" (§ 924(c) and § 924(j)) into a single count it has done just that.

Mr. Woodson's plea before Judge Autrey was proper because § 924(j) is not a separate offense – contrary to the DOJ's current position – and thus can and should be included in the same count as the § 924(c) violation. Furthermore, the Woodson plea was proper – and conformed with the 1999 memorandum – because after the amendment, the Superseding Information – unlike defendant Jordan's indictment – set forth only one § 924(c) count based on a single predicate offense despite the fact that the § 924(c) violation encompasses multiple incidents, multiple victims resulting in multiple deaths.

### E. The District of Columbia Circuit Court Holding in *United States v. Anderson* does not Provide Support for the DOJ's Position.

While acknowledging that "Section 924 (c) and 924(j) are unquestionably tied together" Tr. 4/23/21 at 16, the government contends, nonetheless, that the latter constitutes an independent, stand-alone offense, unbound by the unit-of-prosecution strictures of the cases construing § 924(c), "when a person causes a death with a firearm in the course of a violation of

10

924(c)." *Id.* Their argument rests upon a semantic distinction between the term "uses" as it appears in § 924(c), and the nominative form of the same word, i.e., "use," as it appears in § 924(j), and the rationale of *United States v. Anderson*, 59 F.3d 1323 (D.C. Cir. 1995) (en banc).

*Anderson* addressed the unit-of-prosecution issue created when multiple violations of § 924(c) are predicated on a single, continuing, drug trafficking crime. Noting that, in such cases, the term "uses" in § 924(c) can continue over a period of time, the court reasoned that the Section is ambiguous as to whether such a use can support multiple § 924(c) violations occurring over the course of one continuing drug trafficking crime. *Anderson*, 59 F. 3d at 1332-33. Given such ambiguity, that court concluded, application of the rule of lenity dictates that each violation of § 924(c) must be supported by a different predicate offense. *Id.* at 1333. *See also United States v. Lindsay*, 985 F. 2d 666, 676 (2d Cir. 1993) (invoking rule of lenity and concluding that a defendant who uses multiple firearms in violation of a single predicate offense may be charged with only one § 924(c) violation). The government's argument continues by reasoning that, where the use of a firearm is of finite duration, the ambiguity that concerned the *Anderson* court does not exist, thus obviating the need to require each use to rest on a different predicate offense. Because a firearm-based homicide under § 924(j) employs "use" as a noun rather than a verb, it identifies temporally discrete acts that can be parsed into separate occurrences. Tr. 4/23/21 at 18. *See also* ECF No. 3181 at 13-14. It therefore follows, the government maintains, that "each time a defendant kills a person using a firearm while engaged in a drug trafficking crime, he commits a separate offense" that can be charged and punished as such notwithstanding the unit-of-prosecution rule adopted by most circuits. ECF No. 3181 at 13; Tr. 4/23/21 at 18.

But Congress did not write the statute that way. If it had intended such a straightforward result, it easily could have said so. Instead, as the government concedes, Tr. 4/23/21 at 17-18, §

11

924(j) applies when "[a] person who, *in the course of a violation of [18 U.S. C.§ 924] subsection (c),* causes the death of a person through the use of a firearm." (emphasis added). Thus, in enacting the section and expressly referring to the commission of a homicide "in the course of a violation of subsection [924](c)," Congress obviously intended the noun "use" to refer back to the prong of that subsection making subject to punishment "any person who, during and in relation to a * * * drug trafficking crime * * * uses * * * a firearm . . . ." 18 U.S.C. § 924(c)(1)(A). Nothing in subsection (c) confines the operative term "uses" to continuing activities of the sort that troubled the *Anderson* court. Instead, the term broadly embraces *all* uses of a firearm in furtherance of one of the covered predicate offenses, including the use of a firearm for a finite period such as its employment to commit a homicide or to threaten a participant in a narcotics transaction. Accordingly, when construed in its proper context, nothing in the language of § 924(j) suggests that it exempts the government from compliance with the unit-of-prosecution strictures governing § 924(c) that have been adopted by the great majority of the circuits and the DOJ in issuing the 1999 memorandum.

The government's heavy reliance on *Anderson* founders for several other reasons. First, although the *Anderson* court observed that the government's position would be stronger, if in enacting § 924(c), Congress had employed the noun "use" rather than the verb "uses," 59 F.3d 1327-28, it gave no hint whether the outcome in the case would have been different if the use of a firearm was of a finite duration. Given the pervasive textual ambiguity that it perceived in § 924(c), it is likely that the result, resting on the rule of lenity, would have been the same.

Moreover, insofar as *Anderson* relied upon the rule of lenity in concluding that the correct unit of prosecution was the underlying crime-of-violence-drug-trafficking crime rather than the use of a firearm, it is an outlier among the courts of appeals that have reached the same

result. For the most part, those courts have rested their decisions on the premise that double jeopardy principles prohibit the imposition of multiple sentences for a single violation of § 924(c) and the presumption that Congress would not have wished to transgress the Double Jeopardy Clause in enacting that Section. *See, e.g., United States v. Privette*, 947 F.2d 1259, 1262-63 (5th Cir. 1991) ("To avoid violating double jeopardy principles each firearm offense must be sufficiently linked to a separate drug trafficking offense to prevent two convictions on the same drug offense."). That concern, governing the prospect of multiple punishments for a single violation of § 924(c), does not become inoperative merely because the use of a firearm, charged under that subsection, results in homicide. As in every other offense under § 924(c), each such use must be based on a separate predicate crime of violence or drug trafficking crime.

The government's remaining arguments supporting its claim that § 924(j) is exempt from the unit-of-prosecution rule governing § 924(c) can be summarily rejected. First, it claims that, in enacting § 924(j), Congress could not possibly have intended that the commission of multiple homicides during and in relation to a single drug trafficking offense would constitute a single unit of prosecution. Tr. 4/23/21 at 19. But, as we have explained, Congress did not make § 924(j) a separate offense but, rather, an adjunct of § 924(c), and, as most courts acknowledge, double jeopardy principles require that each such offense be predicated upon a different underlying crime. And, from a purely pragmatic standpoint, "in circumstances in which the defendant fires a gun on separate and distinct occasions, the government often will be able to charge the acts as separate § 924(c)(1) violations linked to separate predicate offenses." *Anderson*, 59 F.3d at 1334. That solution—i.e., parsing a continuing drug trafficking conspiracy into its component crimes— will, likewise, often be available to address the government's unit-of-prosecution concern when the serial use of a firearm results in multiple homicides.

13

It is also of no consequence, as the government argues, Tr. 4/23/21 at 19, that, in order to obtain an enhanced sentence under § 924(j), the government must, under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), and its progeny, establish the commission of a homicide beyond a reasonable doubt. As we have explained in a prior submission, *see* ECF No. 2944 at 14-15, simply because the government must prove a sentence enhancement beyond a reasonable doubt does not transform the enhancement provision into separate crime.

## III.    THE DOJ IS FREE TO CHANGE THE GUIDANCE IT GIVES TO LOCAL FEDERAL PROSECUTOR SO LONG AS ITS ACTIONS ARE NOT BARRED BY JUDICIAL ESTOPPEL.

In its Second Response, the government argues that "[i]t cannot be the case that United States is forever barred from changing its position after it gives internal *guidance* to its prosecutors." ECF No. 3181 at 24. It further asserts that it "frequently updates its *guidance* in response to changes in the legal landscape" and that it "is not prohibited by concepts of judicial estoppel from altering its *guidance* or as here, deciding that its *guidance* does not apply in the circumstances presented." *Id.* at 25. This argument is based on a meritless, false premise.

In its attempt to circumvent the 1999 memorandum, the government repeatedly mischaracterizes it as a "guidance memorandum."  Tr. 4/23/21 at 21, 23, 24. One need only look at the plain language of the memorandum to see that this characterization is incorrect. The 1999 memorandum is much more than "guidance." Rather, it is a *directive* from the Assistant Attorney General *that mandates* it be followed by all federal prosecutors throughout the country.

Specifically, the 1999 memorandum reads: "After careful evaluation of the question, it is the Department's position that indictments henceforth should be charged in accordance with the majority position taken by the courts of appeals. Consequently, United States Attorneys' Offices *are instructed in all future cases* to adopt the practice basing each § 924(c) count in an indictment upon a separate predicate offense." *See* ECF No. 2667 at 36 (emphasis added).

14

Of course the DOJ can change any guidance it gives to local federal prosecutors throughout the country when it sees fit, as it recently did in the Woodson case. But that's not what this case is about and that's not what happened here. After it promulgated the 1999 memorandum, the DOJ then went into court after court and held that directive out for the courts to see, ensuring these courts that the issue was not worthy of review because the DOJ had resolved it—not by issuing a "guidance"—but rather by issuing a "directive" that would be followed by federal prosecutors throughout the country.

When the Solicitor General made this argument multiple times in the Supreme Court it did not tell the Court that a "guidance" had been issued. It told the Supreme Court that a *directive* had been issued rendering the issue moot and not worthy of review. And that argument proved persuasive; time and again it resulted in legal victories for the DOJ and legal defeats for the various defendants in the Supreme Court and the courts of appeals. Yet, when the government indicted Mr. Jordan it did exactly what it told the courts it would no longer do.

Finally, it is important to note that it is undisputed that the government used the 1999 memorandum to persuade courts to accept its position and avoid adverse decisions. Mr. De Pue and Ms. Oliver, through the stipulated and unrebutted sworn declaration, established that the government repeatedly cited to the memorandum to support its position in the United States Supreme Court and various courts of appeals. ECF No. 2944 at 2-3. It was also unrebutted and undisputed that the 1999 memorandum was in fact authored in part to obviate the need for the Supreme Court to review this issue and reduce the likelihood of a decision adverse to the government. Thus, this critical element of judicial estoppel is proven. *See New Hampshire v. Maine*, 532 U.S. 742, 750 (2001); *Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co.,* 617 F.3d 1040, 1051 (8th Cir. 2010).

Respectfully submitted,

/s/ J. William Lucco
J. William Lucco, #01701835IL
Lucco, Brown, Threlkeld & Dawson, LLP
224 St. Louis Street
Edwardsville, Illinois 62025
(618) 656-2321
(618) 656-2363 - Facsimile
Email: blucco@lbtlaw.com


/s/ Maria A. Pedraza
Maria A. Pedraza, #317458PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 – Facsimile
Email: maria_pedraza@fd.org


Hunter S. Labovitz, #204760PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 Facsimile
Email: hunter_labovitz@fd.org

/s/ Michael J. Gorla
Michael J. Gorla, #26399MO
555 Washington Avenue
St. Louis, Missouri 63101
(314) 621-1617
(314) 621-7448 - Facsimile
Email: mjgorla@msn.com


/s/ James J. McHugh, Jr.
James J. McHugh, Jr., #48408PA
Federal Community Defender for the
Eastern District of Pennsylvania
601 Walnut Street, Suite 540W
Philadelphia, PA 19106
(215) 928-1100
(215) 928-1112 - Facsimile
Email: james_mchugh@fd.org

Dated: June 18, 2021                     *Counsel for Defendant Anthony Jordan*

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 18, 2021, the foregoing was filed electronically with the

Clerk of the Court to be served by operation of the Court's electronic filing system upon the

following:

Michael A. Reilly
Thomas S. Rea
Erin O. Granger
Assistant United States Attorneys
111 South 10th Street, 20th Floor
St. Louis, Missouri 63102

Ann Adams
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, DC 20530

/s/ Michael J. Gorla
/s/ J. William Lucco
/s/ Maria A. Pedraza
/s/ James J. McHugh, Jr.
/s/ Hunter S. Labovitz

# Exhibit 1

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   S5-4:15 CR 404 HEA |
| | ) | |
| | ) | |
| MAURICE WOODSON, | ) | |
| a/k/a "Blue" or Lil Blue," (Def. 15), | ) | |
| | ) | |
| Defendant. | ) | |

## SUPERSEDING INFORMATION

### COUNT 1
(Drug Conspiracy)

The United States of America charges that:

Beginning at an exact time unknown to the Grand Jury, but including 2012, and continuing thereafter to the date of this Information, in the Eastern District of Missouri and elsewhere,

### MAURICE WOODSON,
### a/k/a "Blue," or "Lil Blue,"

the Defendant herein, did knowingly and willfully conspire, combine, confederate and agree with each other and other persons known and unknown to this Grand Jury, to commit offenses against the United States, to wit: to knowingly and intentionally distribute and possess with intent to distribute a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, in violation of Title 21, United States Code, Section 841(a)(1).

All in violation of Title 21, United States Code, Section 846; and

The amount of cocaine involved in the conspiracy and attributable to Defendant MAURICE WOODSON as a result of his own respective conduct, and the conduct of other conspirators, known or reasonably foreseeable to him, is 500 grams or more of a mixture or substance

containing a detectable amount of cocaine, making the offense punishable under Title 21, United States Code, Section 841(b)(1)(B)(ii)(II).

## COUNT 2
(Murders of Victims Earts and Jones)

The United States of America further charges that:

On or about December 5, 2013, and November 28, 2014, in the City of Saint Louis, within the Eastern District of Missouri,

**MAURICE WOODSON,**
**a/k/a "Blue," or "Lil Blue,"**

the Defendant herein, acting with others including ANTHONY JORDAN did knowingly possess, brandish and discharge one or more firearms in furtherance of drug trafficking crimes which may be prosecuted in a court of the United States, to wit: conspiracy to distribute and to knowingly and intentionally possess with the intent to distribute a mixture or substance containing a detectable amount of cocaine, as charged in Count 1 herein.

In violation of Title 18, United States Code, Sections 2 and 924(c)(1)(A).

And in the course of this violation caused the death of BYRON "BK" EARTS, SR. on December 15, 2013, through the use of a firearm, and caused the death of DANTE JONES on November 28, 2014, through the use of a firearm, which killing is a murder as defined in Title 18, United States Code, Section 1111, in that the defendant, acting with malice aforethought, unlawfully killed BYRON "BK" EARTS, SR. on December 15, 2013, and DANTE JONES on November 28, 2014, by shooting each victim with a firearm, willfully, deliberately, maliciously, and with premeditation, thereby making this offense punishable under Title 18, United States Code, Sections 2 and 924(j)(1).

## COUNT 3
### (Attempt to Kill a Witness)

The United States of America further charges that:

Beginning on a date unknown to the grand jury, but including between on or about February 1, 2016 and March 31, 2016, and continuing up to the date of this Information, within the Eastern District of Missouri,

### MAURICE WOODSON,
### a/k/a "Blue," or "Lil Blue,"

the Defendant herein, did knowingly and intentionally conspire, combine, confederate and agree, with other persons both known and unknown to the federal grand jury, to commit offenses against the United States, to wit: to kill and attempt to kill a person with the intent to prevent the attendance and testimony of a person in an official proceeding, namely *United States v. Maurice Woodson, a/k/a "Blue," or "Lil Blue," et al.*, S1-4:15CR 404 HEA/NAB.

In violation of Title 18, United States Code, Sections 1512(a)(1)(A), and (k), and punishable under Title 18, United States Code, Sections 1512(3) and (k).

Respectfully submitted,

SAYLER A. FLEMING
United States Attorney

THOMAS REA, #53245MO
ERIN GRANGER, #53593MO
Assistant United States Attorneys
111 S. 10th Street, 20th Floor
St. Louis, Missouri   63102
(314) 539-2200

SONIA V. JIMENEZ, #8818NV
Trial Attorney
United States Department of Justice
Criminal Division, Capital Case Section
1331 F. Street, N.W., 6th Floor
Washington, D.C. 20530
(202) 616-2514

UNITED STATES OF AMERICA )
EASTERN DIVISION )
EASTERN DISTRICT OF MISSOURI )

I, Erin Granger, Assistant United States Attorney for the Eastern District of Missouri,

being duly sworn, do say that the foregoing information is true as I verily believe.

ERIN GRANGER, #58593MO
ASSISTANT UNITED STATES ATTORNEY

Subscribed and sworn to before me this ___25th___ day of February, 2021

_____
CLERK, U.S. DISTRICT COURT

By: ___/s/ David L. Braun___
DEPUTY CLERK